Brown, J.
The trial court made findings of fact. In findings 1, 2, 3, and 4 the court identified the parties and the insurance policy and further found that Mayer owns approximately 230 acres of land in the city of Mequon. Then the court found:
“5. That on or about the 28th day of December, 1954, the defendant, Alex D. Mayer, among other things, was engaged in the business of farming approximately 100 acres of the 230-acre parcel of land in the said city of Mequon by virtue of an agreement he entered into with one Don B. Steward. Besides the usual land and buildings commonly associated with agricultural pursuits and the business of farming, such nonfarming items as a home worth far in ex *62 cess of Fifty Thousand ($50,000) Dollars was then under construction on the bank of a 30-acre lake on lands specifically excluded from farming operations. This home is presently occupied by the defendant Mayer as his personal residence.
“6. That on or about December 28, 1954, a multiple-duty relationship existed between the defendant, Alex D. Mayer, and his codefendant-, Frederick G. Sachse; Mayer, as employer, directed Sachse to perform duties such as shining shoes, shoveling snow, filling the wood box and wood cutting. He was also directed to perform certain commercial duties in connection with the business of Flex Belt Company, a business owned, by the defendant, Alex D. Mayer. Said defendant, Frederick G. Sachse, was further- directed on various occasions to perform certain duties in connection with agricultural pursuits under the direction of Steward, the farm tenant.
“7. That at the time of the accident referred to in plaintiff’s complaint, namely December 28, 1954, when the defendant, Frederick G. Sachse, was injured, he was working on a portion of the acreage which was specifically excluded from farming operations, said injuries ■ being sustained on acreage reserved for the use of the owners and their guests, which said acreage, by its very nature, purpose, and use, cannot be classified as a commercial operation; that the acreage for use of the owners and their guests, by its very nature, purpose, and use, cannot be classified as a farming-operation.
“8. That the defendant, Frederick G. Sachse, at the time he was working on nonfarming and noncommercial acreage on December 28, 1954, the date of the accident, could not be classified as a commercial employee nor as a farm employee of his codefendant, Alex D. Mayer.
“9. That the defendant, Frederick G. Sachse, being neither a commercial employee nor a farm employee, is not excluded from coverage by the terms of the .insurance policy issued to the defendant, Alex D. Mayer, by the plaintiff, Hardware Mutual Casualty Company.
“10. That there is no contractual relationship between the plaintiff, Hardware Mutual Casualty Company, and the *63 defendant, Frederick G. Sachse. The said defendant, Frederick G. Sachse, is not a necessary party to a complete determination of the declaratory-judgment action nor does he have an interest adverse to the plaintiff herein; he is neither a necessary nor proper party to this action brought pursuant to sec. 269.56 of the Wisconsin statutes, and is dismissed as a defendant with costs.
“11. That on or about the 10th day of August, 1956, the defendant, Frederick G. Sachse, commenced an action in the circuit court of Ozaukee county, Wisconsin, against Alex D. Mayer, alleging damages for personal injuries sustained by virtue of an accident happening on the premises of the defendant, Alex D. Mayer, on the 28th day of December, 1954. The accident referred to happened on a portion of the Mayer premises specifically excluded from farming operations and from commercial operations.
“12. That the defendant, Frederick G. Sachse, at the time of injuries sustained on December 28, 1954, could not be classified as a commercial employee nor as a farm employee of his codefendant, Alex D. Mayer, and therefore is not excluded from coverage by the terms of the policy issued by the plaintiff, Hardware Mutual Casualty Company, to the defendant, Alex D. Mayer.”
The policy in question is in two parts, the first is referred to as the basic policy and was issued March 28, 1952. Accompanying and made a part of it are a number of declarations. The basic policy begins:
“[The company] Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions, and other terms of this policy: [Emphasis ours.]
“Insuring Agreements
Reference to the declarations is further made by paragraph 19 of the basic policy, which reads:
*64 “19. Declarations. By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.”
Among the declarations appears the legal description of Mayer’s farm of 221 acres. Within this area is a wooded tract. Sachse was injured when he was cutting a limb off a tree there.
On January 14, 1955, there was added to the policy an indorsement which the parties referred to as a “Comprehensive Personal Liability Indorsement.” Though the accident had occurred before this date the company agrees that whatever the effect of this indorsement may be it is to be treated as being in effect at the date of the accident.
The basic policy is divided into coverages A, B, C, and D. Coverages A and C refer to automobile accidents, which protection Mayer did not purchase. Also, no automobile was involved in the Sachse accident. Coverage D refers to property damage and that, too, is not involved. Coverage B, alone, is material. It reads: ■
“Coverage B. Bodily Injury Liability — Except Automobile. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness, or disease, including death at any time resulting therefrom, sustained by any person, and caused by accident.”
Among the exclusions stated by the basic policy is (e), to wit:
“This policy does not apply: . . .
“(e) under Coverage B, except with respect to liability assumed under contract covered by this policy, to bodily injury to or sickness, disease, or death of any employee of *65 the insured while engaged in the employment of the insured
It is not disputed that at the time of Sachse’s accident he was employed by Mayer and was hurt in the course of his employment.
Respondents submit that exclusion (e) does not exclude coverage to Mayer because Mayer had a contract obligation to pay Sachse wages for his labor. Coverage B is coverage over bodily injuries, that is, insurance against tort claims, and there is no evidence that Mayer by contract assumed any tort liability. Mayer’s obligation to pay wages has nothing to do with Coverage B or the exclusion of (e). Exclusion (e) withholds coverage with respect to- liability for the injury to the employee of the insured while the employee was engaged in the employment. This is Sachse’s situation and we conclude that the basic policy affords no protection to Mayer against the claim of Sachse for personal injury.
We must then examine the Comprehensive Personal Liability Indorsement to see whether it affects the terms of the basic policy. The indorsement begins:
“It is agreed that:
“I. The policy does not apply to any business pursuits of an insured, except (a) in connection with the conduct of a business of which the named insured is the sole owner and (b) activities in such pursuits which are ordinarily incident to nonbusiness pursuits.
“ ‘Business’ includes trade, profession or occupation, and the ownership, maintenance, or use of farms, and of property rented in whole or in part to others, or held for such rental, by the insured other than (a) the insured’s residence if rented occasionally or if a two-family dwelling usually occupied in part by the insured or (b) garages and stables incidental to such residence unless more than three car spaces or stalls are so rented or held.
“II. Except as it applies to the conduct of a business of which the named insured is the sole owner, the policy is amended as follows: . . .”
*66 In the briefs the parties refer to the words just quoted as “the preamble” to the indorsement and we adopt that term for it in discussing the indorsement.
By preamble I, the policy applies to Mayer’s business pursuits only in connection with the conduct of a business of which Mayer is the sole owner and his activities in such pursuits are ordinarily incident to nonbusiness pursuits. By definition in preamble I, the ownership, maintenance, or use of farms and the rental of property is a business. The property where Sachse was hurt, whether farm or not, was solely owned by Mayer. Respondents submit, and the trial court found, that the wood lot was not operated as a part of the farm. They support this finding by this provision in Mayer’s agreement with Steward:
“. . . farm property known as the Pit Lake Farms, shall be operated on the basis as outlined following:
“The tenant [Steward] who will also be called manager is to operate the Pit Lake Farm properties as will be mutually agreed with the owners from time to time.
“The owners will furnish the farm consisting of approximately 225 acres of which about 100 acres are tillable and suitable for farm purposes. The balance of the acreage which consists of woods, swampland, lakes, and wasteland is to be preserved for the use of the owners and their guests for sporting purposes such as hunting and fishing. In addition to the land area the owners will furnish the tenant with a suitable residence building and such other barns and shed buildings as now occupy the premises.”
Even if it should be the fact that by their agreement farming operations were not carried on in the area to be preserved in its uncultivated state, including the wooded area, that is a provision which affects only Steward and Mayer in their agreement with each other. Their agreement does not concern us. We are concerned with the agreement between Mayer and the appellant. In dealing with Steward, *67 Mayer furnishes “the farm consisting of approximately 225 acres of which about 100 acres are tillable and suitable for farm purposes,” but when Mayer dealt with the appellant to obtain insurance coverage Mayer DECLARED that this was a farm of 221 acres without modifying any part of its character or withdrawing any part of that acreage from the farm classification. Respondents assert that this declaration does not bind Mayer because it was made in error and the error was made by the insurance company, wherefore the company cannot take advantage of it. While we may presume that some company agent typed the declaration of the basic policy, there is no evidence and no presumption that any company representative wrote down anything other than the information given him by Mayer or by some agent for Mayer, particularly in view of the statement above in paragraph 19 of the basic policy that “. . . the named insured agrees that the statements in the declarations are his agreements and representations, . . .”
If mistake there was in Mayer’s declarations, an action for reformation of the policy might lie but no proceeding of the sort has been attempted. In the absence of reformation, Mayer has no standing here to contend that this area is not a farm and is not subject to coverage restrictions as a business pursuit, i.e., a farm, of which Mayer is the sole owner. The findings of the trial court that the portion of the wooded acreage was specifically excluded from farm operations and cannot be classified as a farming operation and that Sachse was injured while working on nonfarming and noncommercial acreage, are unsupported by and contrary to the evidence in so jar as the classifications of Sachse and of the acreage are concerned in an interpretation of the insurance policy. The terms of the policy and the declarations contained by reference in it constitute this acreage as a farm as a matter of law for the purposes of the insurance policy, and it is immaterial *68 that recitations contained in other contracts with other people (such as Mayer and Steward) describe it otherwise.
We also note that Mayer’s present contention is inconsistent even with his own recitations of his agreement with Steward in that the property described is “farm property” consisting of the whole 225-acre tract which Steward is “to operate,” though not all of it is tillable.
Mayer kept records to enable him to allocate his costs in his various activities. His record shows that he charged Sachse’s pay on this day to the farm operation. Mayer testified also that Sachse performed no work on that day at Mayer’s home nor in any other Mayer activity except the farm. Mayer testified “the accident happened on the farm operation.” He explained that his use of the “farm” term was merely a convenient designation of the area where Sachse worked without intending this to be farming-business operations but from these records Mayer ascertained what he paid for Sachse’s labor in the farm area and took the payment as a business deduction on his income tax. Sachse’s pay for the whole day, December 28, 1954, was so charged. There can be no doubt but that Sachse’s wages for the day were charged against the farm and were deducted as a business expense — the farm business. We cannot escape the conclusion that the farm operation was a business solely owned by Mayer, and Sachse was employed in it when he was injured December 28, 1954.
Part II of the preamble of the indorsement says that the basic policy is amended except as it applies to the conduct of a business, of which Mayer is the sole owner. Such a business was being conducted at the time and place of the accident and it must follow that the basic policy was not amended by the indorsement. The coverage, then, is that which is given by the basic policy, unamended. That policy by exclusion (e) excludes coverage for the personal injury *69 of any employee of the insured, while engaged in the employment of the insured.
The parties raise and argue other propositions but we consider that the provisions of the policy and the facts hereinbefore stated are decisive and discussion of such other contentions need not be pursued.
We must hold that the judgment declaratory of coverage for this injury was error. The judgment is reversed with directions to declare that the policy does not give coverage to respondent Mayer under the circumstances of Sachse’s injury on December 28, 1954.
The judgment appealed from also determined that Sachse was neither a necessary nor a proper party to this action and it dismissed the complaint against him made by the Hardware Mutual Casualty Company. That part of the judgment, too, must be reversed. The trial court reached its conclusion by noting that Sachse’s tort action against Mayer is unaffected by the question of whether Mayer has or has not insurance coverage for the accident and therefore Sachse has no interest in the outcome of the present action.
The action is brought under the Uniform Declaratory Judgments Act, sec. 269.56, Stats.
Sec. 269.56 (11), (12), Stats., is:
“(11) Parties. When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the right of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard,-and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard.
*69a “(12) Construction. This section is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered.”
Condition 12 of appellant’s basic policy provides:
“12i Action Against Company. No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured’s obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.
“Any person or organization or the legal representative thereof who has secured such, judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a codefendant in any action against the insured to determine the insured’s liability.
“Bankruptcy or insolvency of the insured or of the insured’s estate shall not relieve the company of any of its obligations hereunder.”
While it is true, as the trial court realized, that a judgment in favor of Sachse against Mayer in his tort action would not depend in any way on Mayer’s insurance coverage, the amount of Sachse’s recovery upon the judgment may depend very materially upon the coverage. In the unhappy event that a judgment rendered in favor of Sachse in the tort action should prove uncollectible from Mayer we are confident that Sachse would discover that he had had a very pressing interest in establishing that appellant’s policy is applicable to his accident. Therefore Sachse should be heard upon the question and have the opportunity to present testimony and argument to sustain the coverage. He recog *69b nizes sufficient interest presently to submit a brief jointly with defendant Mayer in support of the judgment, including the issue of coverage. We consider Sachse is both a proper and a necessary party to the action for declaratory judgment.
The following opinion was filed October 4, 1960:
The part of the judgment dismissing plaintiff’s action (with costs) against Sachse for declaratory judgment must also be reversed.
By the Court. — Both parts of the judgment are reversed, and the cause remanded for further proceedings not inconsistent with the opinion.
Hallows, J., took no part.