Steven C. TIETSWORTH, David Bratz,
John W. Myers, Gary Streitenberger,
Gary Wegner and on behalf of themselves
and all others similarly situated,
Plaintiffs-Appellants,

v.

HARLEY-DAVIDSON, INC. and
Harley-Davidson Motor Company,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 2004AP2655. Oral argument September 7, 2006.
—Decided July 12, 2007.*

2007 WI 97

(Also reported in 735 N.W.2d 418.)

For the defendants-respondents-petitioners there were briefs by *W. Stuart Parsons, Patrick W. Schmidt, Jeffrey O. Davis, Kelly H. Twigger, David A. Strifling,* and *Quarles & Brady LLP,* Milwaukee; *Robert L. Binder* and *Foley & Lardner,* Milwaukee, and oral argument by *W. Stuart Parsons.*

For the plaintiffs-appellants there was a brief by *Ted W. Warshafsky, Frank T. Crivello, II,* and *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.,* Milwaukee; *Jonathan D. Selbin, Lisa J. Leebove,* and *Lieff, Cabraser, Heimann & Bernstein, LLP,* San Francisco, Calif.; *David J. Bershad, Michael M. Buchman, Michael R. Reese,* and *Milberg Weiss Bershad & Schulman LLP,* New York, N.Y.; *Shpetim Ademi, Guri Ademi, Robert K. O'Reilly,* and *Ademi & O'Reilly, LLP,* Cudahy, and oral argument by *Jonathan D. Selbin.*

¶ 1. DAVID T. PROSSER, J. The issue presented in this review is whether plaintiffs may reopen their case and amend their complaint after the circuit court has dismissed the complaint in its entirety on the merits and the dismissal has been affirmed on appeal. The court of appeals reversed the circuit court's determination that it could not reopen the case to amend the complaint on these facts without a clear directive from the court deciding the appeal. *Tietsworth v. Harley-Davidson, Inc.* (*Tietsworth III*), 2006 WI App 5, 288 Wis. 2d 680, 709 N.W.2d 901. After carefully reviewing the facts, the statutory and case law, and the policy embodied in the procedural code, we agree with the circuit court. Consequently, we reverse the court of appeals.

¶ 2. We hold that in the absence of a remand order in the mandate line or some other clear directive from the appellate court ultimately deciding the appeal, a circuit court has no authority to reopen the case for an amended complaint after an appellate court has affirmed the dismissal of the complaint in its entirety on the merits.

## FACTS AND PROCEDURAL HISTORY

¶ 3. This case has a lengthy history, including a previous decision by this court. *Tietsworth v. Harley-Davidson, Inc.* (*Tietsworth II*), 2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233. In *Tietsworth II*, this court addressed the merits of plaintiffs' tort-based complaint against the defendants. Now we are called upon to address the procedural ramifications of *Tietsworth II.* This requires us to set out the procedural history of the case.

¶ 4. On June 28, 2001, Steven C. Tietsworth, a resident of California, filed a complaint in the Milwaukee County Circuit Court on behalf of himself and a class consisting of all persons and entities in the United States who have owned, own, leased, lease, or acquired 1999 and early 2000 model Harley-Davidson motorcycles equipped with Twin Cam 88 or Twin Cam 88B engines. *Tietsworth v. Harley-Davidson, Inc.* (*Tietsworth 2001*), No. 2001CV5928 (Mil. Cty. Cir. Ct. June 28, 2001).[1] The complaint alleged that defendants, Harley-Davidson, Inc. and Harley-Davidson Motor

---

[1] *Tietsworth 2001* is a nonlegal denomination that distinguishes this case from a second *Tietsworth* case filed in 2004 (*Tietsworth 2004*). The appellate decisions heretofore published in this case are denominated *Tietsworth I, Tietsworth II,* and *Tietsworth III.* Hence, this decision will become *Tietsworth IV.*

101

Company (Harley), had designed, manufactured, marketed, and sold motorcycles with defective engines because of cam bearings that were faulty, inferior, and prone to sudden failure. The complaint asserted four tort-based causes of action: (1) negligence; (2) strict products liability; (3) fraudulent concealment; and (4) fraudulent misrepresentation and deceptive trade practices in violation of Wis. Stat. § 100.18(1) and (11)(b).

¶ 5. On September 27, 2001, Tietsworth amended his complaint, adding four Wisconsin residents as named plaintiffs (collectively, Tietsworth).

¶ 6. The factual basis for the complaint is discussed in *Tietsworth II,* 270 Wis. 2d 146, ¶¶ 5–6. In essence, Harley-Davidson, the only major American-based motorcycle manufacturer, redesigned its motorcycle engines in the late 1990s, developing the Twin Cam 88 and Twin Cam 88B engines for the 1999 and early 2000 models. A problem cropped up. On January 22, 2001, Harley sent a letter to Tietsworth and approximately 140,000 other owners of the subject motorcycles, explaining that "the rear cam bearing in a small number of Harley-Davidson Twin Cam 88 engines has failed." While the letter assured Harley owners that they would probably never have to worry about this problem, it reported that Harley was extending the standard one-year/unlimited mileage warranty to a five-year/50,000 mile warranty on the rear cam bearing. For owners who wanted to repair their engines immediately, Harley made available cam bearing repair kits for $495.00.

¶ 7. Tietsworth's complaint alleged that Harley motorcycles with the Twin Cam 88 or 88B engines are inherently defective and have an unreasonably dangerous propensity to suffer premature cam bearing failure,

resulting in engine failure. Although Tietsworth did not identify any specific engine failures, especially in motorcycles owned by the named plaintiffs, he asserted that the "inherent cam bearing defect" posed safety risks and diminished the value of all Harley motorcycles with Twin Cam 88 engines. This led to his four tort-based claims.

¶ 8. On November 1, 2001, Harley filed motions to dismiss the complaint and to stay discovery. On December 3, 2001, Tietsworth filed a cross-motion to compel discovery. The circuit court, William J. Haese, Judge, granted Harley's motion to stay discovery; and on February 27, 2002, it dismissed the entire complaint for failure to state a claim.[2] The court dismissed the negligence and strict products liability claims because the plaintiffs failed to allege any actual damages and because the economic loss doctrine barred the claims. The court dismissed the two fraud claims because the plaintiffs did not allege any actual damages.

¶ 9. On April 12, 2002, Tietsworth filed a notice to appeal the dismissal of his common law fraud and statutory fraudulent misrepresentation/deceptive trade practices claims.

¶ 10. On that same day—April 12—Tietsworth's counsel filed a separate class action lawsuit against Harley on behalf of Wilton Jones and Richard Kempen (collectively, Jones). The *Jones* suit made contract claims, namely, breach of warranty and unjust enrichment, based on the same facts involving the Twin Cam 88 and 88B Harley engines. *Jones v. Harley-Davidson, Inc.*, No. 2002CV3629 (Mil. Cty. Cir. Ct. Apr. 12, 2002).

---

[2] The circuit court dismissed the complaint approximately eight months after the complaint was filed.

¶ 11. On September 23, 2002, the Milwaukee County Circuit Court, Jeffrey A. Kremers, Judge, dismissed the entire *Jones* complaint for failure to state a claim because Jones did not allege a cognizable injury. The court stated that to recover under a breach of warranty, Jones was required to allege an actual failure of the engine and Harley's refusal or inability to fix the failure. A mere allegation of a defect was not sufficient. Likewise, to recover under unjust enrichment, Jones must have alleged actual engine failure. Jones did not appeal.

¶ 12. On March 4, 2003, the court of appeals decided Tietsworth's appeal. *Tietsworth v. Harley-Davidson, Inc.* (*Tietsworth I*), 2003 WI App 75, 261 Wis. 2d 755, 661 N.W.2d 450. The court of appeals reinstated both the common law fraud and statutory fraudulent misrepresentation/deceptive trade practices claims on the theory that plaintiffs had suffered actual damages under the "benefit of the bargain" rule and under the standard enunciated in *Pritzlaff v. Archdiocese of Milwaukee,* 194 Wis. 2d 302, 315, 533 N.W.2d 780 (1995). *Tietsworth I,* 261 Wis. 2d 755, ¶¶ 11–16.

¶ 13. Harley sought review of the decision to reinstate the two fraud claims; and on March 26, 2004, we reversed. *Tietsworth II,* 270 Wis. 2d 146. With regard to the fraudulent misrepresentation/deceptive trade practices claim, we held that the plaintiff did not allege facts to meet the elements of the statutory claim. *See id.,* ¶ 40. Specifically, we held that non-disclosure did not constitute an assertion, representation, or statement of fact under Wis. Stat. § 100.18(1). *Id.,* ¶ 40. In addition, we stated that to the extent any affirmative assertions were made, they were mere commercial puffery. *Id.,* ¶ 41.

¶ 14. We dispatched the common law fraud claim by holding that it was barred by the economic loss doctrine. *Id., ¶* 37. Our discussion of the economic loss doctrine included the following passages in paragraphs 36 and 37:

> As such, the plaintiffs have warranty remedies for the alleged defects in their motorcycles. In addition, there are contract remedies at law and in equity to the extent that the plaintiffs were fraudulently induced to purchase their motorcycles. A contract fraudulently induced is void or voidable; a party fraudulently induced to enter a contract may affirm the contract and seek damages for breach or pursue the equitable remedy of rescission and seek restitutionary damages . . . . The economic loss doctrine does not bar these *contract* remedies for fraudulently induced contracts. . . .

> In short, we see no reason to recognize an exception to the economic loss doctrine to allow this consumer contract dispute to be remedied as an intentional misrepresentation tort. The economic loss doctrine bars the plaintiffs' common-law fraud claim. The plaintiffs may have contract remedies—breach of contract/warranty or rescission and restitution—but may not pursue a tort claim for misrepresentation premised on having purchased allegedly defective motorcycles.

*Tietsworth II,* 270 Wis. 2d 146, ¶¶ 36–37.

¶ 15. After discussing both fraud claims, we reversed the court of appeals. Our mandate stated: "The decision of the Court of Appeals is reversed." *Id.* at 172. There was no mention of "remand" in the mandate or in the decision.

¶ 16. Following the release of *Tietsworth II,* Tietsworth filed a completely new lawsuit against Harley alleging (1) breach of warranty; (2) restitution;

105

and (3) fraudulent inducement to contract. *Tietsworth v. Harley Davidson, Inc.* (*Tietsworth 2004*), No. 2004CV3305 (Mil. Cty. Cir. Ct. Apr. 12, 2004). This new case was assigned to Circuit Judge Francis Wasielewski. Tietsworth soon decided, however, that he had made a procedural error by filing a new complaint, that instead he wanted to reopen *Tietsworth 2001*. He asked Harley to stipulate to the voluntary dismissal of *Tietsworth 2004*. Harley refused. Harley filed a motion to dismiss *Tietsworth 2004* on May 26, 2004, under the theory of claim preclusion.

¶ 17. On June 17, 2004, while *Tietsworth 2004* was pending, Tietsworth asked Circuit Judge Michael Guolee, who had inherited the original case from Judge Haese, for leave to reopen *Tietsworth 2001* to amend the complaint. Tietsworth asserted three new claims: (1) breach of warranty; (2) fraudulent inducement to contract; and (3) unjust enrichment. *Id.*

¶ 18. Before Judge Guolee ruled on Tietsworth's motion, Judge Wasielewski granted Harley's motion to dismiss *Tietsworth 2004*.[3] Judge Wasielewski reasoned that the new claims were barred by claim preclusion based on this court's decision in *Tietsworth II*.[4] He also considered whether the new claims were barred under claim preclusion by the circuit court's decision in *Jones*. Although he noted that the parties in the two cases were not identical, Judge Wasielewski pondered whether the parties shared a unity of interest sufficient that claim preclusion barred the claims in *Tietsworth 2004*. The court reached no conclusion on that question. The parties agreed, however, that the dismissal of

---

[3] The case was dismissed on July 26, 2004.

[4] It also dismissed Tietsworth's claim for breach of warranty for failure to state a claim.

*Tietsworth 2004* would not in itself preclude Judge Guolee from reopening the original *Tietsworth 2001* case on grounds of claim preclusion.

¶ 19. On August 23, 2004, Judge Guolee ruled that Tietsworth could not amend his original complaint to introduce contract and warranty claims. The court held that it did not have authority under Wis. Stat. § 808.08(3) to reopen the case. It found that the decision of this court was final and that "[a] trial court may not allow amendments of pleadings when the Supreme Court affirmed the judgment [of dismissal]." The court found that the language in paragraphs 36 and 37 of the supreme court opinion, when read in context, did not grant or allow the court to reopen the case.

¶ 20. Again Tietsworth appealed. On December 13, 2005, the court of appeals reversed, concluding that the circuit court "erred in denying the plaintiffs' motion to reopen and amend the complaint." *Tietsworth III,* 288 Wis. 2d 680, ¶ 9. The court of appeals said that Wis. Stat. § 808.08(3) allowed the circuit court to reopen the case. *Id.,* ¶¶ 13–18. It reasoned that this court reversed the court of appeals but did not "affirm a judgment of dismissal or direct that a judgment of dismissal be entered." *Id.,* ¶ 14. The court cited *State ex. rel. J.H. Findorff & Son, Inc. v. Circuit Court for Milwaukee County,* 2000 WI 30, ¶ 25, 233 Wis. 2d 428, 608 N.W.2d 679, for the proposition that the trial court often has some discretion "on remand" to resolve matters left open, provided that its action is not inconsistent with the order of the higher court. The court of appeals said that the "mandate [of this court] left open the opportunity for the plaintiffs to pursue contract and warranty claims[;]" therefore, amending the complaint would not be inconsistent with the supreme court's order. *Tietsworth III,* 288 Wis. 2d 680, ¶ 15. The court

distinguished the present case from *Sutter v. State,* 69 Wis. 2d 709, 233 N.W.2d 391 (1975), where the controversy went to trial and was fully tried upon the merits. *Tietsworth III,* 288 Wis. 2d 680, ¶ 19. The court of appeals further concluded that justice requires an amendment of the pleadings because the law was unclear as to the viability of Tietsworth's claims when Tietsworth first filed the complaint. *Id.,* ¶ 22. The court also said that justice requires an amendment because this court acknowledged that Tietsworth was entitled to pursue contract and warranty claims in paragraphs 36 and 37 of its decision. *Id.,* ¶ 18.

¶ 21. Harley petitioned for review, which this court granted on February 27, 2006.

## STANDARD OF REVIEW

¶ 22. Whether a circuit court has *statutory* authority to reopen a case is a question of statutory interpretation that we review de novo as a question of law. *Robin K. v. Lamanda M.,* 2006 WI 68, ¶ 5, 291 Wis. 2d 333, 718 N.W.2d 38. Whether a circuit court has non-statutory authority to reopen a case also presents a question of law. *Harvest Sav. Bank v. ROI Invs.,* 228 Wis. 2d 733, 737–38, 598 N.W.2d 571 (Ct. App. 1999); *see Breier v. E.C.,* 130 Wis. 2d 376, 381, 387 N.W.2d 72, 74 (1986). This court is the final arbiter of the meaning of its own mandates, which we review as questions of law.

## ANALYSIS

¶ 23. This case requires the court to determine whether the circuit court had authority to reopen the case and grant leave to amend the complaint after the

108

circuit court had dismissed the original complaint in its entirety on the merits and the dismissal was affirmed on appeal. The court of appeals determined that the circuit court erred when it denied Tietsworth's motion to reopen the case under Wis. Stat. § 808.08(3) and when it denied his motion to file an amended complaint under Wis. Stat. § 802.09(1). *Tietsworth III*, 288 Wis. 2d 680, ¶ 25. On these grounds, the court of appeals reversed and directed the circuit court to enter an order allowing Tietsworth to file an amended complaint. *Id.*

¶ 24. We reverse the court of appeals because the circuit court did not have authority under Wis. Stat. § 808.08(3) to reopen this case for an amended complaint without a remand or order and therefore did not have authority to grant leave to amend Tietsworth's complaint under Wis. Stat. § 802.09(1).

A. Wis. Stat. § 802.09(1)

■

¶ 25. We look first at Wis. Stat. § 802.09(1) and acknowledge that Wisconsin embraces a policy in favor of liberal amendment of pleadings.[5] Wisconsin Stat. § 802.09(1) allows a party to amend the pleading "once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10." Under other circumstances, "a party may amend the pleading only by leave of court or by written consent of the adverse party." Wis. Stat. § 802.09(1). However, Wis. Stat. § 802.09(1) provides that "leave shall be freely given at any stage of the action *when justice so requires*." Wis. Stat. § 802.09(1) (emphasis added); *see* Jay E. Grenig,

---

[5] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

*Wisconsin Practice Series: Civil Procedure* § 209.2, at 355 (3d ed. 2003) (stating, "The court has wide discretion in determining whether to permit the amendment of pleadings at any stage of the proceedings if justice so requires.").

¶ 26. The liberal policy embodied in Wis. Stat. § 802.09(1) does have limitations. The presumption in favor of amendment, which is grounded in a statute whose chapter is entitled "Pleadings, Motions and *Pretrial* Practice," applies logically only before judgment has been entered in the case. *See* Wis. Stat. ch. 802 (emphasis added); *Piaskoski & Assocs. v. Ricciardi,* 2004 WI App 152, ¶ 31, 275 Wis. 2d 650, 686 N.W.2d 675; *Mach v. Allison,* 2003 WI App 11, ¶ 27, 259 Wis. 2d 686, 656 N.W.2d 766. Once judgment has been entered, the presumption in favor of amendment disappears in order to protect the countervailing interests of the need for finality.

¶ 27. The present case does not implicate, or alter the interpretation of, Wis. Stat. § 802.09 and the policy in favor of liberal amendment of pleadings. Rather, the present case turns on whether the circuit court had authority to grant leave to amend Tietsworth's complaint after the circuit court had dismissed Tietsworth's claim in its entirety on the merits *and* Tietsworth appealed. Once the circuit court issued an order dismissing Tietsworth's complaint in its entirety and Tietsworth appealed that final order, the circuit court no longer had jurisdiction over the case.

¶ 28. If the court of appeals had *affirmed* the circuit court's dismissal of the complaint in *Tietsworth I,*

the court of appeals could have directed the circuit court to grant leave to amend Tietsworth's complaint. The court of appeals, however, reversed the circuit court's dismissal of the complaint. The decision to reverse and remand would have restored the circuit court's jurisdiction if the decision had not been appealed. But when Harley petitioned this court and this court granted review, the court of appeals also lost jurisdiction over the case.

■

¶ 29. When this court decided in *Tietsworth II* to reverse the court of appeals and thereby affirm the circuit court's dismissal of Tietsworth's complaint, this court's decision became the law of the case. At that point, neither the circuit court nor the court of appeals had authority to grant leave to amend Tietsworth's complaint without a clear directive from this court.

B. Wis. Stat. §§ 808.08 and 808.09

¶ 30. Whether this court granted the circuit court authority to reopen the case is thus an issue. To resolve this issue, we examine Wis. Stat. §§ 808.08 and 808.09, and the relevant language in *Tietsworth II.*

¶ 31. Wisconsin Stat. § 808.09 provides an appellate court with several options on appeal: (1) the appellate court may reverse, affirm, or modify the judgment or order; (2) it may order a new trial; or (3) if the appeal is from a part of the judgment or order, it may reverse, affirm, or modify that part of the judgment or order. Wis. Stat. § 808.09. "In all cases an appellate court shall remit its judgment or decision to the court below and thereupon the court below shall proceed in accordance with the judgment or decision." *Id.*

¶ 32.　The last sentence of Wis. Stat. § 808.09 is an explicit directive to "the court below" to "proceed" to implement the "judgment or decision." Thus, the circuit court has clear authority to carry out the mandate, whether the appellate court has affirmed or reversed the circuit court. The circuit court also has authority, without explicit direction, to address collateral matters "left open" in the case, such as costs, preparation and entry of necessary documents, and correction of clerical or computational errors, so long as these actions do not undo the decision of the appellate court. However, there can be no amendments in the trial court that conflict with the expressed or implied mandate of the appellate court. *See* 6A *Callaghan's Wisconsin Pleading & Practice* § 55.81 (4th ed. 2005) (citing *State ex rel. Kurath v. Ludwig,* 146 Wis. 385, 132 N.W. 130 (1911); *Smith v. Armstrong,* 25 Wis. 517, 1870 WL 4034 (1870)).

¶ 33.　Wisconsin Stat. § 808.08 is different from Wis. Stat. § 808.09. Entitled "Further proceedings in trial court," it governs situations in which the appellate court has provided the circuit court with explicit orders or directions for further proceedings. These situations fall into three categories. Wisconsin Stat. § 808.08 reads:

> Further Proceedings in trial court.
>
> When the record and remittitur are received in the trial court:
>
> (1) If the trial judge is ordered to take specific action, the judge shall do so as soon as possible.
>
> (2) If a new trial is ordered, the trial court, upon receipt of the remitted record, shall place the matter on the trial calendar.

(3) If action or proceedings other than those mentioned in sub. (1) or (2) is ordered, any party may, within one year after receipt of the remitted record by the clerk of the trial court, make appropriate motion for further proceedings. If further proceedings are not so initiated, the action shall be dismissed except that an extension of the one-year period may be granted, on notice, by the trial court, if the order for extension is entered during the one-year period.

¶ 34. The issue in this case requires us to interpret subsection (3) of Wis. Stat. § 808.08 to determine whether the trial court had statutory authority to reopen the case for further proceedings. Subsection (1) of § 808.08 does not apply because *Tietsworth II* did not order "specific action"—that is, *Tietsworth II* did not order the trial court to perform a "purely ministerial duty." *See Findorff,* 233 Wis. 2d 428, ¶ 20. Subsection (2) of § 808.08 does not apply because *Tietsworth II* did not order "a new trial."

¶ 35. To determine whether the circuit court had authority under Wis. Stat. § 808.08(3) to reopen the case for further proceedings, we engage in statutory interpretation. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Seider v. O'Connell,* 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). Except for technical or specially defined words, "statutory language is given its common, ordinary, and accepted meaning." *Id.*

¶ 36. Examining the language of Wis. Stat. § 808.08(3), we see that the statute expressly provides that "action" or "proceedings" be "ordered." The common

meaning of the noun "order" is an "authoritative direction" or "command." *Webster's Dictionary* 372 (Albert & Loy Morehead eds., 1981). *The American Heritage Dictionary of the English Language* 1273 (3d ed. 1992), indicates that in law, an "order" is "a direction or command delivered by a court or other adjudicative body and entered into the record;" the verb "order" means to "issue a command or instruction." Therefore, under the plain language of the statute, subsection (3) is triggered if and when the appellate court directs, commands, or instructs (i.e., "orders") the circuit court to take "action" or proceedings other than the "specific action" or new trial described in subsections (1) and (2).

¶ 37. This court had occasion to interpret subsection (3) in *Findorff.* The court explained that Wis. Stat. § 808.08 and Wis. Stat. § 801.58 have often been read together. *Findorff,* 233 Wis. 2d 428, ¶ 15.[6] The court was required to decide whether Findorff was entitled to a substitution of judge after "the court of appeals reversed and remanded a circuit court decision" in Findorff's favor. *Id.,* ¶ 2. The decision turned on whether the court's instructions on remand directed "further proceedings" under Wis. Stat. § 808.08(3) or a purely ministerial duty under § 808.08(1).

---

[6] Wisconsin Stat. § 801.58(7) reads:

> If upon an appeal from a judgment or order or upon a writ of error *the appellate court orders a new trial [e.g., § 808.08(2)] or modifies the judgment or order* as to any or all of the parties in a manner such that further proceedings in the trial court are necessary [e.g., § 808.08(3)], any party may file a request under sub. (1) [for substitution of judge] within 20 days after the filing of the remittitur in the trial court whether or not another request was filed prior to the time the appeal or writ of error was taken.

Wis. Stat. § 808.58(7) (emphasis added).

¶ 38. The court correctly ruled that subsection (3)—ordering "further proceedings"—"required the circuit court to exercise its discretion," thereby giving Findorff a right of substitution. In the course of the decision, the *Findorff* court said:

> [O]ur decision today comports with the traditional view that a circuit court often has some discretion on remand to resolve matters not addressed by a mandate in a manner consistent with that mandate. *Fullerton* [*Lumber Co. v. Torborg*, 274 Wis. 478, 483, 80 N.W.2d 461 (1957)]. In *Fullerton*, this court specifically stated that:
>
>> Where a mandate directs the entry of a particular judgment, it is the duty of the trial court to proceed as directed. The trial court may, however, determine any matters left open, and in the absence of specific directions, is generally vested with a legal discretion to take such action, not inconsistent with the order of the upper court, as seems wise and proper under the circumstances.
>
> *Id.* "Specific action" is limited to purely ministerial duties to reflect this court's preference for providing a circuit court with discretion on remand.

*Findorff,* 233 Wis. 2d 428, ¶ 25.

¶ 39. In the present case, the court of appeals incorrectly took the above-quoted language from *Findorff* and *Fullerton* and applied it in a different context. The court of appeals stated: "The mandate by the supreme court in this case simply 'reversed the decision of the court of appeals' and *remanded* the matter to the trial court." *Tietsworth III,* 288 Wis. 2d 680, ¶ 14 (emphasis added). However, *Tietsworth II* did not "remand" the case to the circuit court. The court of appeals added: "The mandate left open the opportunity for the plaintiffs to pursue contract and warranty

115

claims." *Tietsworth III,* 288 Wis. 2d 680, ¶ 15. "[W]e conclude the trial court retained authority to grant Tietsworth's motion *and, in fact, should have granted the motion to reopen." Id.,* ¶ 20 (emphasis added).

¶ 40. What is especially startling about the court of appeals' decision is that it misstated the mandate of this court, construed the mandate as giving the circuit court "discretion" to reopen a case dismissed on the merits, and implicitly gave Tietsworth a right of substitution as well. In sum, the court of appeals turned *Tietsworth II* into little more than an advisory opinion. To vindicate such action would be "to recognize . . . power to set at naught the judgments of this court." *Kurath,* 146 Wis. at 388.

¶ 41. When appellate courts intend to remand the case for action or proceedings under Wis. Stat. § 808.08(3), they normally issue mandates like the following:[7]

"We therefore reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings not inconsistent with this opinion." *Brown County v. Shannon R.,* 2005 WI 160, 286 Wis. 2d 278, 324, 706 N.W.2d 269. "The decision of the court of appeals is reversed and the cause remanded." *Id.*

"The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion." *Mitchell Bank v. Schanke,* 2004 WI 13, 268 Wis. 2d 571, 619, 676 N.W.2d 849.

---

[7] These mandate lines could also be used when appellate courts are ordering "specific action" under Wis. Stat. § 808.08(1) or "a new trial" under Wis. Stat. § 808.08(2). *Cf. State ex. rel. J.H. Findorff & Son, Inc. v. Circuit Court for Milwaukee County,* 2000 WI 30, ¶¶ 20–21, 233 Wis. 2d 428, 608 N.W.2d 679.

"The judgment of the Jackson County Circuit Court is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion." *State v. Fisher*, 2006 WI 44, 290 Wis. 2d 121, 149, 714 N.W.2d 495.

"The decision of the court of appeals is affirmed, and the case is remanded to the circuit court for further proceedings in accord with this opinion." *State v. Mark*, 2006 WI 78, 292 Wis. 2d 1, 28, 718 N.W.2d 90.

"The decision of the court of appeals is reversed and the cause is remanded to the circuit court for further proceedings consistent with this opinion." *State v. Brown*, 2006 WI 100, 293 Wis. 2d 594, 636, 716 N.W.2d 906.

"The decision of the court of appeals is affirmed in part; reversed in part, and the cause is remanded to the circuit court for further proceedings consistent with this opinion." *Megal v. Green Bay Area Visitor & Convention Bureau*, 2004 WI 98, 274 Wis. 2d 162, 181–82, 682 N.W.2d 857.

"Reversed and cause remanded for further proceedings consistent with this opinion." *Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, 283 Wis. 2d 384, 421, 700 N.W.2d 27.

## C. Relevant Language in *Tietsworth II*

¶ 42. Our mandate line in *Tietsworth II* read nothing like the mandate line in the above-cited cases. It did not read like the mandate line at issue in *Fullerton:* "Judgment reversed, and cause remanded for further proceedings in accordance with this opinion." *Fullerton*, 274 Wis. at 488. It did not read like the September 16, 1997, mandate line at issue in *Findorff:* "Judgment reversed and cause remanded with direc-

117

tions" (preceded by a lengthy, detailed final paragraph). *See Findorff,* 233 Wis. 2d 428, ¶ 37.

¶ 43. The mandate in *Tietsworth II* states, "The decision of the Court of Appeals is reversed." *Tietsworth II,* 270 Wis. 2d at 172. This mandate is clear: the decision of the court of appeals is reversed, thus affirming the circuit court's dismissal of the entire action. The mandate does not order or direct or instruct the trial court to take further action or proceedings. There is no reference to a remand.

¶ 44. If we had wanted to allow the trial court to take further action, we would have specified as much in the mandate or by clear directive in the text of the opinion.

¶ 45. If we search the opinion for aid in construing the mandate, we find further evidence that this court intended that, upon reversing the court of appeals, this case would be ended. In paragraph 2 of *Tietsworth II,* we stated that "[t]he circuit court dismissed the *entire action* for failure to state a claim." *Tietsworth II,* 270 Wis. 2d 146, ¶ 2 (emphasis added). In paragraph 10, we stated again, "The Milwaukee County Circuit Court . . . granted Harley's motion, dismissing the complaint *in its entirety* for failure to state a claim." *Id.,* ¶ 10 (emphasis added). These statements reflect this court's understanding that the circuit court dismissed the entire action on the merits. Therefore, when this court reversed the court of appeals without remand, it affirmed the circuit court's judgment dismissing the entire action.

¶ 46. In her dissent in *Tietsworth II,* Chief Justice Abrahamson acknowledged as much. After stating that "[t]his case comes to us on a motion to dismiss a complaint," *id.,* ¶ 48, the Chief Justice added that "[t]he majority opinion dismisses the plaintiffs' complaint,"

118

*id.,* ¶ 94; *see also* ¶ 48 ("The majority opinion dismisses this claim . . . ."), and ¶ 49 ("The majority dismisses the second claim . . . .").

¶ 47. Paragraphs 36 and 37 in *Tietsworth II*, which Tietsworth claims "explicitly recognize" his contract claims, must be read in the context in which they appear. These paragraphs are near the end of a 15–paragraph discussion of the economic loss doctrine and describe a specific part of this court's version of the doctrine. *See id.,* ¶¶ 23–37. They are fairly interpreted as this court's explanation of the application of the economic loss doctrine to fraud claims.[8] In effect, the court simply recognized that, although the economic loss doctrine bars tort claims, plaintiffs may have a remedy in contract claims.[9]

---

[8] Tietsworth relies on the following language to assert that this court allowed Tietsworth to pursue any potential contract-based claims:

> As such, the plaintiffs have warranty remedies for the alleged defects in their motorcycles. In addition, there are contract remedies at law and in equity to the extent that the plaintiffs were fraudulently induced to purchase their motorcycles. . . .

> In short, we see no reason to recognize an exception to the economic loss doctrine to allow this consumer contract dispute to be remedied as an intentional misrepresentation tort. . . . The plaintiffs may have contract remedies—breach of contract/warranty or rescission and restitution—but may not pursue a tort claim for misrepresentation premised on having purchased allegedly defective motorcycles.

*Tietsworth II,* 270 Wis. 2d 146, ¶¶ 36–37.

[9] We agree with Milwaukee County Circuit Court Judge Guolee's statements:

> Now, I think it is very clear here when I read the totality of the decision by Judge Sykes that this language was not a grant to allow these claims or amendment of these claims. When we look at

## D. Option To Clarify Mandate

¶ 48. Tietsworth contends that he believes paragraphs 36 and 37 of *Tietsworth II* invited the circuit court to allow amendment of his complaint. This contention is implausible because Tietsworth's initial action after appeal was to file an entirely new lawsuit, *e.g., Tietsworth 2004,* instead of seeking to amend the original complaint. If Tietsworth believed the mandate favored reopening the case, he should have filed a motion under Wis. Stat. § (Rule) 809.14 to clarify the effect of our mandate or a motion for reconsideration under Wis. Stat. § (Rule) 809.64.[10] *See Johann v. Milwaukee Elec. Tool Corp.,* 270 Wis. 573, 579, 72 N.W.2d 401 (1955) (finding that where party finds any

her decision, the paragraph that included the warranty remedy language was preceded by discussion of the *Huron Tool* exception to the Economic Loss Doctrine.

This is a major issue that has been before the Supreme Court and there's been some controversy on this, the economic loss doctrine. That was what she was really talking about. The Court noted that the [*Huron Tool*] exception did not apply to this case, because the fraud alleged pertained to the character and quality of the goods that were the subject of the matter of the contract. The following paragraph stated as such. The plaintiffs have warranty remedies.

Now, by saying this, these warranty remedies were never brought up by the plaintiff or addressed by the Court. The Court was simply implying that economic loss doctrine would not bar these claims . . . not that the plaintiff would be allowed to bring them.

[10] Wisconsin Stat. § (Rule) 809.14 (Motions) provides, "A party seeking an order or other relief in a case shall file a motion for the order or other relief . . . ."

Wisconsin Stat. § (Rule) 809.64 (Reconsideration) provides, "A party may seek reconsideration of the judgment or opinion of

ambiguity in the opinion or the mandate the proper place to raise the issue is before the court that issued the mandate and not before the trial court); *State ex rel. Lisbon Town Fire Ins. Co. v. Crosby,* 240 Wis. 157, 159, 2 N.W.2d 700 (1942); *State ex rel. Blackdeer v. Township of Levis,* 176 Wis. 2d 252, 260, 500 N.W.2d 339 (Ct. App. 1993).[11]

■

¶ 49. Parties should follow this procedure because it promotes finality and protects scarce judicial resources by permitting the court that issued the mandate to resolve any ambiguity. *Cf. Blackdeer,* 176 Wis. 2d at 260 n.4.

E. General Rule

■

¶ 50. From this discussion, it is possible to state a general rule. In the absence of a remand order in the

the supreme court by filing a motion under s. 809.14 for reconsideration within 20 days after the date of the decision of the supreme court."

[11] Parties often file these motions to clarify a mandate. For example, in *Kenosha Hospital & Medical Center v. Garcia,* 2004 WI 137, 276 Wis. 2d 359, 688 N.W.2d 462, plaintiffs filed a motion in this court asking us to clarify "the directions upon remand as to whether Kenosha Hospital should be allowed to conduct further discovery to support its claim." In *Metropolitan Ventures, LLC v. GEA Associates,* 2007 WI 23, 299 Wis. 2d 174, 727 N.W.2d 502, plaintiffs asked this court to clarify the issues on remand to eliminate any needless arguments about this court's holdings in *Metropolitan Ventures, LLC v. GEA Associates,* 2006 WI 71, 291 Wis. 2d 393, 717 N.W.2d 58. In *Hardware Mutual Casualty Co. v. Mayer,* 11 Wis. 2d 58, 69, 105 N.W.2d 322 (1960), the parties asked this court to clarify its mandate because the parties differed as to the meaning of this court's language near the end of the opinion.

mandate line or some other clear directive from the appellate court ultimately deciding the appeal, a trial court whose judgment or final order has been affirmed by the appellate court on the merits has no authority to reopen the case for an amended complaint. This general rule is designed to assure compliance with the appellate court's decision. It conforms to the long-established principle that "a judgment of a trial court when affirmed by this court becomes in legal effect the judgment of this court and the trial court has no power to vacate or set it aside." *Hoan v. Journal Co.,* 241 Wis. 483, 485, 6 N.W.2d 185 (1942).[12]

F. Policy Interests

¶ 51. Our holding today furthers the interests in finality, fairness, and efficiency by holding parties responsible for their deliberate choice of strategy and by preventing piecemeal litigation. It also enforces compliance within the judicial system. *See Ins. Corp. of Am. v.*

---

[12] This holding is consistent with the rule in other jurisdictions. *See, e.g., Madeksho v. Abraham, Watkins, Nichols, & Friend,* 112 S.W.3d 679, 695–96 (Tex. App. 2003) (holding that where "the judgment of the trial court is simply affirmed, there is no reinvestiture of any 'jurisdiction' (limited or otherwise) in the trial court"); *Griset v. Fair Political Practices Comm'n,* 23 P.3d 43, 51 (Cal. 2001) (holding unqualified affirmance ordinarily sustains judgment and ends litigation; therefore, trial court did not have jurisdiction to reopen case once supreme court's decision became final); *Waterhouse v. Iowa Dist. Ct. for Linn County,* 593 N.W.2d 141, 142 (Iowa 1999) (holding that in absence of remand directing further proceedings in trial court, jurisdiction of district court terminates both as to parties and subject matter when district court judgment has been affirmed); *see also State ex rel. Frazier & Oxley, L.C. v. Cummings,* 591 S.E.2d 728 (W.Va. 2003); *Ins. Corp. of Am. v. Barker,* 628 A.2d 38 (Del. 1993).

*Barker,* 628 A.2d 38, 41 (Del. 1993). The holding protects the interest in finality by preventing Tietsworth from having another "kick at the cat." *See Sutter,* 69 Wis. 2d at 715.

¶ 52. The record indicates that Tietsworth has had many kicks so far. Tietsworth commenced litigation in June 2001. Since that time, his action has been heard two times in the circuit court, two times in the court of appeals, and now two times in this court. Tietsworth also filed a second action, *Tietsworth 2004,* in the circuit court that was barred by claim preclusion. His counsel, representing overlapping plaintiffs, filed another class action, *Jones,* that was dismissed for failure to state a claim, but not appealed. To allow Tietsworth to continue with new claims would have the same effect as allowing a party to file a claim after the statute of limitations has expired: finality and predictability would be jeopardized, and the evidence might be stale. As we stated in *Sutter,* "It is desirable that litigation come to an end." *Sutter,* 69 Wis. 2d at 716.

¶ 53. As noted above, our holding is not at odds with the sensible principle stated in *Fullerton* that a trial court may determine any matters *left open* by the higher court as long as the determination is not inconsistent with the higher court's mandate.[13] *Fullerton,* 274 Wis. at 483. In *Fullerton,* the plaintiff business was seeking an injunction and damages against the defendant, its former employee, for violating a restrictive covenant not to compete. The trial court held that the covenant was invalid. This court reversed, remanding

---

[13] In *Fullerton Lumber Co. v. Torborg,* 274 Wis. 478, 482, 80 N.W.2d 461 (1957), the court cited Wis. Stat. § 274.35(1) (1955), as the source of authority for the trial court to act on matters "left open." This statute is the predecessor of Wis. Stat. § 808.09, not Wis. Stat. § 808.08.

the case to the trial court to determine the appropriate duration of the covenant. The opinion instructed the lower court as follows: "The judgment is reversed, and the cause remanded for a determination by the trial court of the extent of time as to which the restrictive covenant with respect to defendant's operations in Clintonville is reasonable and necessary for plaintiff's protection, and for judgment enjoining defendant from a breach thereof." *Id.* at 480.

¶ 54. Upon remand, the trial court judge refused to establish the amount of damages, stating, "If [the supreme court] wanted me to also establish damages and take testimony I suppose [it] would have said a new trial is granted for the purpose of determining damages." *Id.* at 481. This court reversed, holding that the trial court should have established damages because the plaintiff's motion was not inconsistent with this court's mandate and directions. This court stated, "The trial court may, however, determine any matters left open, and in the absence of specific directions, is generally vested with a legal discretion to take such action, not inconsistent with the order of the upper court, as seems wise and proper under the circumstances." *Id.* at 483.

¶ 55. *Fullerton* may be distinguished from this case as one where the higher court did not resolve all issues pertaining to the claim and specifically remanded the case to the trial court for further proceedings. In *Fullerton,* this court had issued the following mandate in the first appeal: "Judgment reversed, and *cause remanded for further proceedings in accordance with this opinion." Fullerton Lumber Co. v. Torborg,* 270 Wis. 133, 148, 70 N.W.2d 585 (1955) (emphasis added). The mandate was clear, therefore, that this court intended to vest authority in the trial court to take further

proceedings. This court could have mandated further proceedings in this case, but it chose not to do so.

¶ 56. In addition, this court's reversal in *Tietsworth II* did not leave open any unresolved issues as in *Fullerton.* Tietsworth argues that his contract-based claims remain unresolved. However, these claims do not remain unresolved because he chose not to allege them in his original pleadings or to amend the pleadings while the case was still in the trial court. Therefore, these claims were not part of this action.

¶ 57. Tietsworth also argues that the trial court should have authority to reopen the case and allow the amendment of the pleadings because this court's reversal in *Tietsworth II,* which affirmed the trial court's dismissal of the complaint, did not constitute a final judgment on the merits. In *Sutter,* we stated that "[a]fter final judgment has been rendered or directed on appeal, ordinarily the trial court has no power to allow the amendment of the pleadings." *See Sutter,* 69 Wis. 2d at 717.

¶ 58. Tietsworth seeks a ruling that the *Sutter* finality principle does not apply in this case because this court's reversal does not equal a final judgment on the merits. However, a dismissal for failure to state a claim is a judgment on the merits. *See Juneau Square Corp. v. First Wis. Nat'l Bank,* 122 Wis. 2d 673, 686, 364 N.W.2d 164 (Ct. App. 1985) (citing *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 399 n.3 (1981)); *cf. Medved v. Baird,* 58 Wis. 2d 563, 567, 207 N.W.2d 70 (1973).

¶ 59. It is suggested that the circuit court's failure to state whether its dismissal was "with prejudice" created confusion as to the finality of the judgment. Of

125

course, the circuit court may have been willing to consider an amendment of the complaint in February or March 2002. However, when Tietsworth appealed, he forced the issue and resolved any ambiguity, if there were any, as to whether the circuit court's dismissal was with or without prejudice: Tietsworth deemed it to be with prejudice. Tietsworth would not have been able to appeal his claim to the court of appeals without permission if the circuit court had not dismissed his claim with prejudice, thus constituting a final judgment on the merits. *See* Wis. Stat. § 808.03(1) (stating that "[a] final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals"); *Plourde ex rel. State v. Habhegger,* 2006 WI App 147, ¶ 1 n.2, 294 Wis. 2d 746, 720 N.W.2d 130 (stating that party could not appeal order denying motion for summary judgment without permission because order was a nonfinal order).

¶ 60. Accordingly, when this court reversed the court of appeals in *Tietsworth II,* it affirmed the circuit court's dismissal as a final judgment. *See Juneau Square,* 122 Wis. 2d at 686. Without an "order" for further proceedings by this court in the mandate line or in some other clear directive, the circuit court lacked statutory authority to grant Tietsworth leave to amend his complaint. *See Hoan,* 241 Wis. at 485.[14]

---

[14] The circuit court's dismissal of *Tietsworth 2004* under the theory of claim preclusion supports this conclusion. The court in that case recognized that this court's dismissal of Tietsworth's claims in *Tietsworth II* operated as a final judgment and therefore precluded subsequent claims. If the court in *Tietsworth 2004* did not think our dismissal was a final judgment, it would have allowed Tietsworth to proceed,

¶ 61. Our decision in this matter promotes finality and fairness by holding parties responsible for the consequences of their deliberate choices of strategy. As stated in *Sutter*, "Justice does not require that plaintiffs be twice afforded their day in court." *Sutter*, 69 Wis. 2d at 719. If Tietsworth had wanted to amend his complaint to add or substitute the contract-based claims, he should have sought leave to amend the complaint with Judge Haese in 2001 or early 2002. Tietsworth, however, chose a different strategy—he chose to appeal the dismissal of his tort claims. At that point, he waived his opportunity to amend his complaint in the trial court and to assert a new cause of action absent permission from a reviewing court. *See State ex rel. Freeman Printing Co. v. Luebke*, 36 Wis. 2d 298, 304, 152 N.W.2d 861 (1967) (stating, "An appeal from a final judgment would normally remove the complete case from the trial court at the time the appeal was perfected.").

¶ 62. Tietsworth cannot argue that he was not aware of the contract-based claims at the time he filed the complaint in the trial court. On June 28, 2001, when Tietsworth first filed his complaint, the law was well established as to the viability of contract-based claims.[15]

¶ 63. In addition, by his own admission at the oral argument for *Tietsworth II* on November 5, 2003, Tietsworth's counsel recognized that contract causes of action were available. In response to a question why he did not pursue contract claims, Tietsworth's counsel explained that he was not obligated to have one cause of

---

[15] *See First Nat'l Bank & Trust Co. of Racine v. Notte*, 97 Wis. 2d 207, 225, 293 N.W.2d 530 (1980) (stating that a contract fraudulently induced is void or voidable and a party fraudulently induced to enter into a contract "has the election of either rescission or affirming the contract and seeking damages").

action from one set of facts, that he could have tort and contract causes of action at the same time.[16] When asked why he did not sue for breach of warranty, Tietsworth's counsel replied that he had sued Harley for breach of warranty in a separate action (*Jones*) shortly after the circuit court dismissed *Tietsworth 2001* but that the circuit court had dismissed *Jones* for failure to state a claim.[17]

¶ 64. Tietsworth cannot assert, however, that the decision in *Jones* deterred him from amending his complaint to add contract-based claims. Tietsworth's counsel filed his notice to appeal the dismissal of

---

[16] The dialogue occurred as follows:

COURT: So why shouldn't they then abide by their contract causes of action and not a tort cause of action?

ATTORNEY: That's a very good question and part of the answer here is . . . that you're not obligated to only have one cause of action. As this court has recognized, it's often the case that the same set of facts will give rise to multiple causes of action. I think Your Honors' opinion just this year recognized that it's often the case that you can have a contract claim as well as a tort claim arising from the same set of facts. There's nothing novel about that.

[17] The dialogue occurred as follows:

COURT: Counselor, even if there wasn't back and forth negotiation, can't your client still sue for breach of warranty? I mean, you have to negotiate for it to be able to use it, do you?

ATTORNEY: You would think we would be able to sue for breach of warranty, and after this case was dismissed at the trial court level, we brought a lawsuit for breach of warranty, and Harley-Davidson stood up and made precisely the same arguments with regard to our warranty claims that they made with regard to these claims. They said, "Ah, until your motorcycle fails; until you're stranded in the middle of nowhere, you don't have a cause of action under warranty," and they prevailed upon that.

Tietsworth's tort claims the same day he filed the *Jones* contract complaint. This shows that Tietsworth's decision to appeal, rather than to amend his complaint, was not affected by the subsequent *Jones* decision.

¶ 65. Also during oral argument, Tietsworth's counsel revealed the reason why Tietsworth did not pursue contract claims: Tietsworth wanted punitive damages. As Tietsworth's counsel was explaining the limitations of a warranty claim, he stated that one of the limitations was that "it [would] wipe out the ability to seek punitive damages."[18] When asked whether Tietsworth was seeking punitive damages, counsel replied that he was.[19]

---

[18] The dialogue occurred as follows:

COURT: Why, why would the manufacturer immunize itself by giving a warranty . . . ? Don't they just provide an overt cause of action that otherwise you'd have to argue is implied?

ATTORNEY: They would provide an overt cause of action under a warranty that they have unilaterally issued and whose terms they've decided with limitations, with limitations on what you can recover and how you can recover, they can wipe out your common law claims; they can wipe out your right to pursue claims based on all of their fraud that proceeded the sale simply by giving you a contract claim. And, for example, it would wipe out the ability to seek punitive damages.

COURT: Well, that's because contracts don't have punitive damages in Wisconsin, but . . .

ATTORNEY: Right

[19] The dialogue occurred as follows:

COURT: Are you seeking punitive damages in this case?

ATTORNEY: We are not seeking punitive damages in this case.

COURT: You were seeking punitive damages?

¶ 66. It appears then that Tietsworth deliberately chose a strategy to pursue tort claims for the opportunity to recover punitive damages. When a member of the court observed that Tietsworth had a heavy burden to establish tort claims, Tietsworth's counsel replied, "We've got a tough case to prove. We think we can prove it." Tietsworth knew, therefore, that he had chosen a tough strategy. Tietsworth had every right to choose that strategy, but by doing so, he risked losing the opportunity to pursue other causes of action, and he must now accept the consequences.

## CONCLUSION

¶ 67. We reverse the court of appeals and affirm the circuit court's judgment denying Tietsworth's motion to reopen the case. When this litigation came before this court in *Tietsworth II*, both the circuit court and the court of appeals were divested of any authority to grant leave to amend Tietsworth's complaint without permission from this court. Our decision in *Tietsworth II*, which affirmed the circuit court's dismissal of Tietsworth's complaint in its entirety, became the law of the case. In the absence of a remand order in the mandate line or some other clear directive from this court in *Tietsworth II*, the circuit court had no authority to reopen the case for an amended complaint after this court had affirmed the dismissal of the complaint in its entirety on the merits.

*By the Court.*—The decision of the court of appeals is reversed.

---

ATTORNEY: Well, I'm sorry, I misspoke, Your Honor. We are under the fraud, the common law claim, we are seeking punitive damages, Your Honor. I apologize; I misspoke.

¶ 68. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). The parties, the circuit court, and the court of appeals ask just what did this court mean in *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233 (*Tietsworth II*), when this court announced that it reversed the decision of the court of appeals.[1] More specifically they ask, may the plaintiffs reopen the case and amend their complaint or are they barred from pursuing these actions?

¶ 69. The circuit court denied the plaintiffs' motion to reopen the case, holding that it lacked authority to do so. The court of appeals reversed the circuit court, holding that the plaintiffs were entitled, as a matter of law, to reopen and amend their complaint.

¶ 70. In trying to resolve the case, the majority opinion adopts a new rule (apparently interpreting Wis. Stat. §§ 808.08 and 808.09), holding as follows: "[I]n the absence of a remand order in the mandate line or some other clear directive from the appellate court ultimately deciding the appeal, a circuit court has no authority to reopen the case for an amended complaint after an appellate court has affirmed the dismissal of the complaint in its entirety on the merits." Majority op., ¶¶ 2, 67. *See also* majority op., ¶ 50. The majority opinion thus devises a new, special rule to reach its result.

¶ 71. Clear, easy-to-apply rules that are not manipulable are valuable. The majority opinion's new rule, however, is not easy to apply, is susceptible to manipulation, and creates tensions and inconsistencies with past precedent.

¶ 72. Moreover, this new rule is at one and the same time too broad to address the facts of the present

---

[1] The majority opinion identifies this decision as *Tietsworth II,* and for ease of reading I will use the same designation.

case and too narrow to govern other fact situations. Indeed, the majority opinion recognizes this latter deficiency of its rule. The majority severely curtails and undercuts its new rule with language interpreting Wis. Stat. § 808.09 in paragraph 32 of the majority opinion. This language endorses the traditional, oft-repeated precedential rule relating to a circuit court's power after appellate review and, in effect, engulfs and replaces the textual holding.[2]

¶ 73. Paragraph 32 explicitly recognizes that a circuit court has "clear authority to carry out the mandate [of the appellate court], whether the appellate court has affirmed or reversed the circuit court" and "also has authority, without explicit direction, to address collateral matters 'left open' in the case, such as costs, preparation and entry of necessary documents, and correction of clerical or computational errors, so long as these actions do not undo the decision of the appellate court. However, there can be no amendments in the trial court that conflict with the expressed or implied mandate of the appellate court." Majority op., ¶ 32. In other words, the circuit court "may permit amendments which are not contrary to the decision of the reviewing court on appeal."[3] Contrary to the new rule adopted by the majority opinion, matters remain within the circuit court's discretion and may very well include amendment of the pleadings, so long as they do not conflict with the decision of the appellate court.

---

[2] *See State ex rel. J.H. Findorff & Son, Inc. v. Circuit Court for Milwaukee County,* 2000 WI 30, ¶ 25, 233 Wis. 2d 428, 608 N.W.2d 679, quoting with approval *J.H. Fullerton Lumber Co. v. Torborg,* 274 Wis. 478, 483, 80 N.W.2d 461 (1957) (discussed at ¶ 106 and notes 13, 14 of this dissent).

[3] 6A Callaghan's Wisconsin Pleading & Practice, § 55:81 (4th ed. 2005) (citations omitted).

¶ 74. In contrast with the majority opinion and in accord with the decision of the court of appeals, I conclude that the circuit court retained authority to implement the appellate court's decision in *Tietsworth II* that left open the plaintiffs' right to pursue contract and warranty claims. I further conclude that the *Tietsworth II* decision falls within Wis. Stat. §§ 808.08(3) and 808.09 (2003–04),[4] which empower a circuit court to reopen a case for further proceedings. Furthermore, § 802.09(1) authorizes the circuit court, in its discretion, to grant the plaintiffs leave to amend the complaint to pursue the contract and warranty remedies this court recognized in the *Tietsworth II* decision. I therefore dissent.

¶ 75. I would remand this cause to the circuit court and have it decide, within its discretion, whether the plaintiffs should be granted leave under Wis. Stat. § 802.09(1) to amend their pleadings to raise the contract and warranty claims.

¶ 76. I have organized my discussion in this dissent as follows: Part I briefly looks at the changed nature of supreme court review upon the creation of the court of appeals in 1978. Part II critiques the majority opinion's new rule by applying it to the present case. Part III examines and applies Wis. Stat. §§ 808.08(3) and 808.09 to the present case. Part IV discusses § 802.09(1). I conclude that the mandate line is not dispositive of the power of the circuit court after review; the decision is.

I

¶ 77. This case must be examined in the context of the supreme court's present review of decisions of the

---

[4] All references to the Wisconsin statutes are to the 2003–04 version unless otherwise noted.

court of appeals in contrast to the supreme court's direct consideration of trial court orders and judgments before 1978. Before 1978, that is, before the creation of the court of appeals, this court would directly review an order or judgment of a trial court. If in a pre-1978 appeal the supreme court announced its affirmance of a circuit court order or judgment, the trial court's order or judgment became in effect the judgment of this court.[5]

¶ 78. Since 1978, upon granting a petition for review,[6] the supreme court reviews the decision of the court of appeals, not the judgment or order of the circuit court.[7] This court does not ordinarily affirm a judgment or final order of a circuit court on review.[8] Any such affirmance must be read into the decision by

[5] *Hoan v. Journal Co.,* 241 Wis. 483, 485, 6 N.W.2d 185 (1942).

[6] This court also accepts cases on certification from the court of appeals and on bypass. In these instances, the court takes a direct appeal from the circuit court and decides whether to affirm or reverse a judgment or order of the circuit court. The present case is here on a petition to review a decision of the court of appeals, not certification or bypass.

[7] Although the supreme court reviews the decision of the court of appeals, the supreme court is directed to remit, that is to send back, to the circuit court the circuit court record and the supreme court's decision (unless the court of appeals is to act further). The process by which the decision and mandate of the appellate court, along with the circuit court record, are returned to the circuit court is referred to as remittitur. Wis. Stat. (Rule) § 809.26.

[8] Occasionally a decision of this court on a petition for review explicitly affirms the circuit court's order or judgment. *See, e.g., State v. Jenich,* 94 Wis. 2d 74, 288 N.W.2d 114 (1980). There, the text announced an affirmance of a circuit court order. The mandate line in *Jenich* also expressly stated: "Decision of the court of appeals is reversed; order of the circuit court is affirmed."

examining the reasoning of this court's decision and the decision of the court of appeals. A careful reading of *Tietsworth II* demonstrates that the decision never explicitly affirmed the circuit court.[9]

¶ 79. The majority opinion conveniently ignores that upon granting a petition for review this court does not review a judgment or order of the circuit court and repeatedly—and mistakenly—asserts that in *Tietsworth II* this court affirmed the circuit court's dismissal of the complaint. *See, e.g.,* majority op., ¶¶ 29, 43, 45. Moreover, the majority opinion equates this court's reversal in *Tietsworth II* of the decision of the court of appeals (which in turn reversed the circuit court's order of dismissal) not only with an affirmance of the circuit court's dismissal of the tort claims but also with an affirmance of a dismissal of all plaintiffs' claims for all time. Care must be taken not to fall for this sleight of argument.

¶ 80. Nothing in *Tietsworth II* explicitly states that this court is affirming the circuit court's dismissal of the complaint, let alone that this court is affirming the dismissal of the entire complaint for all time.

¶ 81. Moreover, beware of references to our pre-1978 case law, especially regarding the mandate line. Before 1978, this court directly reviewed circuit court judgments and orders and formulated mandate lines and decisions to that effect. Before 1978, the court also

---

[9] The majority opinion supports its conclusion that this court affirmed the judgment or final order of the circuit court by snipping and pasting various phrases in *Tietsworth II* that describe the order of the circuit court as dismissing the complaint in its entirety, and then bootstraps a conclusion that in reversing the court of appeals this court "affirmed the circuit court's judgment dismissing the entire action." Majority op., ¶ 45.

used a different style manual that instructed the justices and staff regarding acceptable mandate lines.

¶ 82. The Wisconsin Supreme Court Style and Procedures Manual presently in use states that although the mandate line gives direction, instructions are also given in the body of the decision. It states as follows:

> The mandate line gives the court's decision. If it is necessary to include further instructions or direction to another court, that information may be placed in the last paragraph or two of the opinion where it can be easily located. If another court is to take specific action, it is essential that a specific court be mentioned.

The Style and Procedures Manual provides an illustrative, non-exhaustive list of mandate lines, but the use of these mandate lines is not required. As the examples set forth in the majority opinion at ¶ 41 illustrate, the framing of the mandate lines varies.

¶ 83. The mandate line cannot be taken as the dispositive interpretative tool to our decisions. The decision must be read along with the mandate line.

¶ 84. I turn now to critique the majority opinion's new rule by applying it to the present case.

## II

¶ 85. I have organized this part of my dissent as follows:

> (A) A critique of the majority's new rule requiring the word "remand" in the mandate and the application of this rule to the present case.

> (B) A critique of the majority's new rule requiring "some other clear directive" and the application of this rule to the present case.

(C) The significance to the present case of paragraph 32 in the majority opinion and the traditional case law approach to a circuit court's power after a decision of an appellate court and their application to the present case.

## A. "Remand" in the Mandate

¶ 86. As part of its holding, the majority opinion fashions a new rule that requires that the mandate line state that the cause is being remanded or that the appellate court provide some other clear directive in order for the circuit court to have authority to reopen the case for the amendment of pleadings. I begin with the first of these requirements: "remand."

¶ 87. The majority opinion endows the word "remand" in the mandate line with magical powers, in spite of the court's ordinary reluctance to require the use of magic words or phrases to command results.

¶ 88. The initial line (the disposition) in our *Tietsworth II* decision simply states: "Reversed" and the mandate line simply states, "The decision of the court of appeals is reversed." *Tietsworth II*, 270 Wis. 2d at 151, 172.

¶ 89. The majority opinion's interpretation of *Tietsworth II* turns on these two lines of the lengthy decision. The majority opinion's reasoning, and its holding for future cases, primarily rest on this court's omission in *Tietsworth II* of the words "and cause remanded" after the initial word of disposition, "reversed," and the court's omission of the same words "and cause remanded" in the mandate line. The majority opinion concludes that "[i]f we had wanted [in *Tietsworth II*] to allow the trial court to take further action, we would have specified as much in the mandate . . . ." Majority op., ¶ 44.

¶ 90. The word "remand" does not have the same meaning as "remit." The process by which the decision and mandate of the appellate court, along with the circuit court record, are returned to the circuit court is referred to as remittitur. The last sentence of Wis. Stat. § 808.09 is both a remittitur provision and a direction to the circuit court to proceed when it gets the remittitur. It states that "[i]n all cases an appellate court shall remit its judgment or decision to the court below and thereupon the court below shall proceed in accordance with the judgment or decision." *See also* Wis. Stat. (Rule) § 809.26 (relating to remittitur). The supreme court need not use the word "remand" in the mandate line for the case to be returned (that is, remitted) to the circuit court and for the circuit court to take further action. Section 808.08 supplements § 808.09 and discusses further proceedings in the trial court after remittitur.

¶ 91. Notably, our disposition and mandate in *Tietsworth II* did not prohibit the plaintiffs from reopening their complaint to plead the contract and warranty claims we had recognized. They did not explicitly order that the action be dismissed in its entirety. They did not explicitly direct that a judgment of dismissal be entered.

¶ 92. Although the majority opinion penalizes the plaintiffs because the court did not use the magic word "remand" in the mandate line, the majority opinion nonetheless recognizes that mandate lines may be Delphic and open to competing interpretations.

¶ 93. The majority opinion acknowledges that motions have been filed in this court to clarify a mandate, *see* majority op., ¶ 48. Indeed, the majority opinion even faults the plaintiffs for not bringing a motion to clarify the mandate. Majority op., ¶ 48. This

138

criticism misses the mark. One reason the plaintiffs may not have sought clarification is that they believed that *Tietsworth II* allowed them to amend the complaint to assert the contract and warranty claims the decision explicitly stated were available. Furthermore, this court's appellate practice and procedure rules do not explicitly authorize the motion for clarification that the majority opinion embraces. Although such a motion may be a good idea and the court has responded to such motions, they are not the only recognized way to proceed.[10]

¶ 94. Commentary on appellate practice often complains that appellate decisions are not clear regarding what, if anything, should happen when the trial court record and the supreme court's decision are returned to the trial court. Appellate courts are urged to spell out the consequences, if any, of a decision for further proceedings. In fact, the mandates at ¶ 41 of the majority opinion, which the opinion offers as illustra-

---

[10] The defendant suggests that the procedural remedy may be to move the court to reconsider under Wis. Stat. § 809.64 and the Internal Operating Rules, § II J. In *Johann v. Milwaukee Electric Tool Corp.,* 270 Wis. 573, 579, 72 N.W.2d 401 (1955), the court concluded (without citation) that when filing its motion for a rehearing (now a motion for reconsideration) the party should have raised any question about any ambiguity in the remand. *Johann* does not speak to a case in which no party seeks a motion for rehearing or reconsideration. It is also arguable that the remedy of a party aggrieved when a circuit court does not follow a mandate of an appellate court is to seek mandamus in the appellate court that issued the decision. *See, e.g., Litzen v. Eggert,* 238 Wis. 121, 123, 297 N.W. 382 (1941); *State ex rel. Blackdeer v. Township of Levis,* 176 Wis. 2d 252, 259, 500 N.W.2d 339 (Ct. App. 1993); 6A Callaghan's Wisconsin Pleading & Practice, § 55:82 (4th ed. 2005) (citations omitted).

tions, are typical of mandates that are criticized as not helpful.[11]

¶ 95. The meaning of a mandate line must be deciphered by applying a generally accepted rule of interpretation: Interpret words in their context. Thus, the mandate line must be interpreted in light of the text of the lengthy decision itself. The majority opinion, despite the rigid and formalistic components of its rule, actually agrees with this interpretive approach. Majority op., ¶ 47. I now attempt to apply it.

B. "Some Other Clear Directive"

¶ 96. The failure of the mandate line to include the word "remand" does not sink the circuit court's powers. The majority opinion allows a circuit court to reopen a case and amend the pleadings when "in the absence of a remand order in the mandate line," the circuit court "is given *some other clear directive* from

---

[11] Barbara Green, *Cracking the Code: Interpreting and Enforcing the Appellate Court's Decision and Mandate,* 32 Stetson L. Rev. 393, 394, 402 (2002) (discussing the difficulties involved with deciphering mandates from the appellate court and announcing that "it would be helpful for appellate courts to give clear guidance to the trial court and to the parties" following remand). Green chides appellate courts, writing that trial courts and lawyers sometimes need to look for a "Rosetta Stone" to decipher appellate mandates. *Id.* at 393. According to this author, the mandate lines set forth in the majority opinion at ¶ 41 do not satisfy the standards of clarity recommended in this article.

Nancy A. Wanderer, in *Writing Better Opinions: Communicating with Candor, Clarity, and Style,* 54 Me. L. Rev. 47, 60 (2002), also explains that "[i]f the case on appeal is to be remanded, the appeals court should provide clear directions about what the trial court should do on remand. In this way, subsequent appeals may be avoided." *Id.* at 60.

the appellate court" (emphasis added). Majority op., ¶¶ 2, 67. The standard "some other clear directive" is not easy to apply and is susceptible to manipulation.

¶ 97. As I see it, this court in *Tietsworth II* did give the circuit court a clear directive. In *Tietsworth II,* the court announced that the plaintiffs have warranty and contract remedies for the alleged defects in their motorcycles and did not declare that these remedies were barred:

> As such, the plaintiffs have warranty remedies for the alleged defects in their motorcycles. In addition, there are contract remedies at law and in equity to the extent that the plaintiffs were fraudulently induced to purchase their motorcycles. A contract fraudulently induced is void or voidable; a party fraudulently induced to enter a contract may affirm the contract and seek damages for breach or pursue the equitable remedy of rescission and seek restitutionary damages . . . . The economic loss doctrine does not bar these *contract* remedies for fraudulently induced contracts. . . .

*Tietsworth II,* 270 Wis. 2d 146, ¶ 36.

¶ 98. The court continued, stating that although the plaintiffs are barred from pursuing tort claims, they may have contract remedies:

> In short, we see no reason to recognize an exception to the economic loss doctrine to allow this consumer contract dispute to be remedied as an intentional misrepresentation tort. The economic loss doctrine bars the plaintiffs' common-law fraud claim. The plaintiffs may have contract remedies—breach of contract/warranty or rescission and restitution—but may not pursue a tort claim for misrepresentation premised on having purchased allegedly defective motorcycles.

*Tietsworth II,* 270 Wis. 2d 146, ¶ 37.

¶ 99. The majority opinion unpersuasively plays down the importance of these two lengthy paragraphs in *Tietsworth II,* in which the court explicitly declared that the plaintiffs have viable claims against Harley-Davidson grounded in contract and warranty.[12]

¶ 100. The majority opinion asserts in a conclusory fashion that the *Tietsworth II* court was simply saying that the economic loss doctrine would not bar these claims, not that the plaintiffs may bring these claims. Majority op., ¶ 47. And how does the majority opinion divine that these two paragraphs do not give the plaintiffs the opportunity to bring their contract claims? By just saying that the two paragraphs "are fairly interpreted as this court's explanation of the application of the economic loss doctrine to fraud claims." Majority op., ¶ 47. That's the legal equivalent of a parent answering a child's query of "why" with a "because I said so."

¶ 101. I conclude that paragraphs 36 and 37 in *Tietsworth II* are just as easily and just as fairly interpreted as leaving open the opportunity for the plaintiffs to bring contract and warranty claims. The *Tietsworth II* court acknowledged that the plaintiffs "*have warranty remedies*" and "*may have* contract remedies*" claims (emphasis added). The *Tietsworth II* court

---

[12] Specifically, the plaintiffs wanted to allege that Harley-Davidson fraudulently induced class members to purchase the motorcycles; that Harley-Davidson breached the express warranty that the motorcycles and engines were free from defects in factory materials and workmanship at the time of sale and for a period of 12 months thereafter; and that Harley-Davidson was unjustly enriched. The first two of these claims, warranty and contract, were explicitly recognized by this court, and the third claim, unjust enrichment, is a corollary of the plaintiffs' contract claims.

deliberately employed the present tense in these paragraphs, not the past tense, thus leaving open the possibility that the plaintiffs may pursue these claims in the future.

¶ 102. That the mandate line in *Tietsworth II* does not explicitly remand the cause to the circuit court for purpose of allowing the plaintiffs to amend the complaint does not dispel the significance of our language in paragraphs 36 and 37. That the court did not explicitly direct or order a remand or an amendment to the pleadings is not unexpected. The plaintiffs did not request a remand to amend the complaint. It is likewise inconsequential that the court did not provide, in the paragraphs preceding the mandate, instructions to the plaintiffs in regard to bringing these claims. The court does not usually give legal advice to the parties and does not ordinarily address amendments to the pleadings unless raised by the parties.

¶ 103. Under the circumstances of the *Tietsworth II* case, an appellate court would not necessarily order the plaintiffs to file an amended complaint asserting these additional theories of liability and would not likely provide explicit guidance in regard to amending the complaint, but it might—and did—leave open the possibility that the plaintiffs may take the initiative under Wis. Stat. §§ 808.08(3) and 802.09(1) to file an amended complaint.

¶ 104. If the majority opinion is looking for "some clear directive" that the amendment of the pleadings is permitted on remittitur, paragraphs 36 and 37 in *Tietsworth II* may be as clear a directive as the court could legitimately provide given the issue actually before the court and the procedural posture of the case.

143

## C. Majority Opinion Paragraph 32 and the Traditional Approach

¶ 105. Until it was altered today by the holding in the instant case (although retained in paragraph 32), the traditional pre-1978 rule was that a circuit court must comply with the appellate court's decision but has the authority to take further action in a case as long as the action is not inconsistent with the decision of the appellate court.[13] The permissible further actions included reopening a case and amending the pleadings, so long as the amendments did not conflict with the decision of the appellate court. Recognizing that this court is fallible and that not all circumstances are foreseen or foreseeable, this court adopted a rule that gave some flexibility to the circuit court after an appeal was decided.

---

[13] *See, e.g., Fullerton Lumber Co. v. Torborg,* 274 Wis. 478, 483–84, 80 N.W.2d 461 (1957). This rule was based in part on Wis. Stat. § 808.09 (and its predecessor statutes), which not only guides the actions an appellate court may take on appeal but also instructs that the circuit court must act in accordance with the appellate court's rulings on remittitur. Wisconsin Stat. § 808.09 provides that an appellate court may reverse, affirm, or modify the judgment or order; may order a new trial; or, if the appeal is from a part of the judgment or order, it may reverse, affirm, or modify that part of the judgment or order. Wisconsin Stat. § 808.09 then states in relevant part that "[i]n all cases an appellate court shall remit its judgment or decision to the court below and thereupon the court below shall proceed in accordance with the judgment or decision." Courts have interpreted the language "shall proceed in accordance with the judgment" as not limiting the circuit court's ability to take action, so long as the action is not inconsistent with the decision from the appellate court. *See, e.g., Fullerton Lumber Co.,* 274 Wis. at 482–83 (citing Wis. Stat. § 274.35(1), the predecessor statute to Wis. Stat. § 808.09, for the proposition that the circuit court may act on matters "left open").

¶ 106. Citing *Fullerton Lumber Co. v. Torbord,* 274 Wis. 478, 80 N.W.2d 461 (1957), this court has endorsed the pre-1978 view of a circuit court's powers in post-1978 cases, stating, "Where a mandate directs the entry of a particular judgment, it is the duty of the trial court to proceed as directed. The trial court may, however, determine any matters left open, and in the absence of specific directions, is generally vested with a legal discretion to take such action, not inconsistent with the order of the upper court, as seems wise and proper under the circumstances." *State ex rel. J.H. Findorff & Son, Inc. v. Circuit Court for Milwaukee County,* 2000 WI 30, ¶ 25, 233 Wis. 2d 428, 608 N.W.2d 679.[14] The court of appeals has similarly followed *Fullerton,* declaring that a circuit court is bound to follow the mandate of the court of appeals (which covered only some issues in that case) but "also has the authority to address any remaining unresolved issues, so long as it acts in a manner consistent with [the appellate court's] mandate." *Harvest Sav. Bank v. ROI Invs.,* 228 Wis. 2d 733, 738, 598 N.W.2d 571 (Ct. App. 1999).

¶ 107. The majority opinion attempts to distinguish *Findorff* and *Fullerton* from *Tietsworth II,* stating that in the prior cases, in contrast with *Tietsworth II,* the mandate line remanded the cause to the circuit court. *See* majority op., ¶ 55. The *Findorff* court did not give weight to any difference in the *Findorff* and *Fullerton* mandates in vesting discretion with the circuit court. *See Findorff,* 233 Wis. 2d at 428, ¶ 25 n.16.

---

[14] In *Findorff,* 233 Wis. 2d 428, 25 (citing *Fullerton,* 274 Wis. at 483), the court declared that the traditional view [is] that a circuit court often has some discretion on remand to resolve matters not addressed by a mandate in a manner consistent with that mandate.

¶ 108. In *Sutter v. State,* 69 Wis. 2d 709, 717, 233 N.W.2d 391 (1975), a pre-1978 case, the mandate line stated, "Judgment reversed and cause remanded with directions to enter judgment not inconsistent with this opinion." On remand the plaintiffs in that case sought relief from the judgment and leave to amend their complaint. The *Sutter* court held against the plaintiffs, declaring, "The trial court has no authority to amend the pleadings after remittitur with the mandate of this court providing specific directions for the entry of a particular judgment."[15] Nevertheless *Sutter* recognized this rule was not ironclad, stating:

> *Generally,* amendments are not permissible on remand where the case was determined on the merits. After final judgment has been rendered or directed on appeal, *ordinarily* the trial court has no power to allow the amendment of the pleadings . . . .[16]

¶ 109. The key words in *Sutter* for purposes of the present case are "generally" and "ordinarily." The *Sutter* court deliberately used these "appellate-court-wiggle-room-words" twice to signal the reader that exceptions exist to the rule that amendments are not permissible when the appeal was determined on the merits.[17]

---

[15] The *Sutter* court distinguished *Fullerton Lumber* on the ground that the *Sutter* mandate directed the entry of a particular judgment. It interpreted the mandate as not requiring further proceedings. *Sutter,* 69 Wis. 2d 717–18.

[16] *Id.* at 717 (citations omitted) (emphasis added).

[17] *See also State ex rel. Freeman Printing Co. v. Luebke,* 36 Wis. 2d 298, 304, 152 N.W.2d 861 (1967) ("An appeal from a final judgment would *normally* remove the complete case from the trial court at the time the appeal was perfected.") (emphasis added).

¶ 110. *Tietsworth II* falls within the traditional rule and paragraph 32 of the majority opinion. The decision left open the opportunity for the plaintiffs to pursue contract and warranty remedies. The plaintiffs' pursuit of these contract claims is consistent with our reversal of the decision of the court of appeals and the circuit court's dismissal of the tort claims in the complaint.

¶ 111. Furthermore, although I conclude that *Tietsworth II* specifically left open the plaintiffs' contract and warranty claims, other members of the court disagree with me and with each other about what *Tietsworth II* means. If we who write the opinions and the mandates cannot agree about the meaning of *Tietsworth II*, it is perfectly understandable that the parties disagree and that the three members of the court of appeals disagree with the circuit court judge about the import of our decision.

¶ 112. Inasmuch as this substantial difference of opinion exists about *Tietsworth II*, should not this court err on the side of giving the plaintiffs their day in court?

¶ 113. I turn now to Wis. Stat. § 808.08(3).

### III

¶ 114. Wisconsin Stat. § 808.08 describes, according to the majority opinion at ¶ 33, what the circuit court must or may do upon receiving the remittitur pursuant to § 808.09.

¶ 115. Wisconsin Stat. § 808.08 provides in full as follows:

> Further proceedings in trial court. When the record and remittitur are received in the trial court:
>
> (1) If the trial judge is ordered to take specific action, the judge shall do so as soon as possible.

(2) If a new trial is ordered, the trial court, upon receipt of the remitted record, shall place the matter on the trial calendar.

(3) If action or proceedings other than those mentioned in sub. (1) or (2) is ordered, any party may, within one year after receipt of the remitted record by the clerk of the trial court, make appropriate motion for further proceedings. If further proceedings are not so initiated, the action shall be dismissed except that an extension of the one-year period may be granted, on notice, by the trial court, if the order for extension is entered during the one-year period.

¶ 116. The dispute between the parties centers on subsection (3) of Wis. Stat. § 808.08. Unlike Wis. Stat. § 808.08(1) and (2), which are addressed to the circuit court, § 808.08(3) is addressed to the parties. Subsection (3) preserves a party's ability to move the circuit court for "further proceedings." Subsection (3) instructs that a party may "make appropriate motion for further proceedings" within a year, or the action will be dismissed. The plaintiffs moved the circuit court pursuant to Wis. Stat. § 808.08(3) within a year for further proceedings.

¶ 117. Wisconsin Stat. § 808.08 has been in the statute books for many years with substantially the same language, although the statute has been renumbered several times.

¶ 118. Chapter 187, Laws of 1977 renumbered former Wis. Stat. § 817.36 (1975) as Wis. Stat. § 808.08, making only minor changes in the statutory language for clarification purposes.[18] Former § 817.36 (1975) itself was formerly numbered Wis. Stat. § 274.36

[18] Chapter 187, Laws of 1977; 1977 S.B. 1. The legislative note from the Legislative Reference Bureau that accompanies the 1977 change emphasizes that "[i]t contains no substantive

(1971). *See In the Matter of the Promulgation of the Rules of Civil Procedure for the State of Wisconsin,* 67 Wis. 2d 585, 761 (1975).[19] No change in statutory language was made.[20] By supreme court order dated November 10, 1964 and effective March 1, 1965, former § 274.36 (1963) was repealed and recreated as § 274.36 (1965).[21]

---

change." Analysis by the Legislative Reference Bureau, 1977 S.B. 1, LRB-9037/1, in Bill Drafting File on 1977 S.B. 1, available at Wisconsin Legislative Reference Bureau, 1 East Main Street, Madison, Wisconsin.

[19] This supreme court order was dated February 17, 1975 and took effect January 1, 1976, and adopted in part, substantially revised in part, and reorganized the rules governing civil procedure into a comprehensive structure known as the Wisconsin Rules of Civil Procedure. Former § 274.36 was incorporated wholesale into chapter 817.

[20] An earlier Supreme Court Order, dated March 31, 1971 and effective July 1, 1971, made minor changes in the statutory language of former § 274.36, "to clear up an ambiguity in the present language." 50 Wis. 2d xvii. No substantive changes were effected.

[21] 1964 Supreme Court Order, 25 Wis. 2d vii (1964). An earlier version of the statute is found in *Zeidler v. Goelzer,* 191 Wis. 378, 388, 211 N.W. 140 (1926) as follows:

> In every case in error or on appeal in which the Supreme Court shall order a new trial or further proceedings in the court below, the record shall be transmitted to such court and proceeding had thereon within one year from the date of such order in the Supreme Court, or in default thereof the action shall be dismissed, unless, upon good cause shown, the court shall otherwise order. It shall be the duty of the losing party in any action or proceeding when a judgment or order in his favor in the court below is reversed by the Supreme Court on the appeal of the opposing party to pay the clerk's fees on such reversal, procure the record in said cause to be remitted to the trial court and bring the cause to trial within one year after such reversal, unless the same be continued for cause, and if he fail so to do, his action shall be dismissed.

¶ 119. Although brief, my recitation of the lengthy history of Wis. Stat. § 808.08 is sufficient for purposes of this dissent. I want to make the following point: Section 808.08 has been on the books for a long time, but the key cases stating what I call the traditional rule of a circuit court's power after an appellate decision (*see, e.g., Fullerton* and *Sutter*) do not rest the traditional rule on the language of § 808.08 or its predecessor. If § 808.08 (or other numbered version of the statute) is mentioned in the cases, the citation is only in passing. These cases rely on Wis. Stat. § 808.09 or its predecessor statutes.

¶ 120. In contrast, the majority opinion appears to peg its holding about the circuit court's power to Wis. Stat. § 808.08, which the majority opinion characterizes as "plain." Majority op., ¶ 36. The majority opinion states that § 808.08(3) is triggered if and when the appellate court directs or commands or instructs the trial court to take "action" other than the "specific action" or new trial described in subsections (1) and (2), and gives examples at paragraph 41.

¶ 121. Although it bases its reasoning primarily on Wis. Stat. § 808.08(3), the majority fails to engage in a proper interpretation of this statute. The court wrestled with the meaning of § 808.08(3) in *State ex rel. J.H. Findorff & Son v. Circuit Court for Milwaukee County,* 233 Wis. 2d 428, 608 N.W.2d 679 (1999), while interpreting and applying §§ 808.08 and 801.58(1).

¶ 122. As acknowledged by the majority opinion, the *Findorff* court drew a distinction between "specific action" and "further proceedings," in subsections (1) and (3) of § 808.08 respectively. Majority op., ¶ 37. It concluded that "specific action" in subsection (1) refers to a circuit court's ministerial duty and "further proceedings" in subsection (3) refers to any proceeding in which

150

the circuit court will exercise discretion. *Findorff,* 233 Wis. 2d at 442–43. *See also In re Commitment of Thiel,* 2004 WI App 140, ¶ 27, 275 Wis. 2d 421, 685 N.W.2d 890 (viewing § 808.08(3) as applying by default when neither subsection (1) nor (2) applies and acknowledging this court's narrow definition of "specific action" in § 808.08(1)).

¶ 123. According to *Findorff,* the mere recitation of a mandate does not tell us whether the mandate falls within § 808.08(1) or (3). Under *Findorff,* this determination requires a careful examination of each case to determine whether the circuit court will perform a ministerial duty or a discretionary act. *Findorff,* 233 Wis. 2d at 448–49. The majority opinion does not engage in the careful analysis of ministerial and discretionary duties as required by *Findorff.*

¶ 124. Moreover, the majority opinion errs in its interpretation of *Findorff,* resulting in an application that chokes all meaning out of § 808.08(3). As I see it, to give subsection (3) meaning, that is, for it not to be superfluous, it must be interpreted to allow the parties to move for further proceedings in the circuit court when a circuit court is not required by subsections (1) and (2) to act upon its own, that is, when an appellate court does not order or direct or give instructions about *specific actions* (subsection (1)) or a *new trial* (subsection (2)). In other words, subsection (3) is triggered when the mandate does not fall within subsections (1) or (2). What else can subsection (3) mean?

¶ 125. Subsection (3) must be read harmoniously with the authority supplied to the circuit court pursuant to Wis. Stat. § 808.09. Subsection (3) thus encompasses cases that fall under the traditional rule, namely that a circuit court must comply with the appellate court's decision but has the authority to take further

action in a case as long as the action is not inconsistent with the decision of the appellate court. Subsection (3) allows parties to petition the circuit court to take these discretionary actions that are not explicitly commanded by the mandate but are not inconsistent with the decision. How else would the parties be able to implement the traditional rule embodied in § 808.09?

¶ 126. The majority opinion expresses great horror at the court of appeals decision in the instant case, exclaiming that "the court of appeals turned *Tietsworth II* into little more than an advisory opinion." Majority op., ¶ 40. Wrong! *Tietsworth II* remains the definitive decision in regards to the plaintiffs' tort claims. The circuit court cannot undo or undermine the initial judgment and certainly cannot revive those dismissed claims. The circuit court, however, retains authority, within its discretion, to permit the plaintiffs to bring the contract and warranty remedies recognized by the *Tietsworth II* court. This is not a power " 'to set at naught the judgments of this court.' " Majority op., ¶ 40 (quoted source omitted).

¶ 127. Underlying much of the majority opinion's interpretation of *Tietsworth II* and Wis. Stat. § 808.08 is the public policy of finality. I agree that finality is important. Indeed the legislature expressly embraced finality in Wis. Stat. § 808.08(3): A party must bring proceedings under § 808.08(3) within one year or be forever barred. The court should follow the legislative directive.

¶ 128. It is clearly desirable that litigation come to an end. But it is also clearly desirable in the present case that the doors of the courthouse be open to consumers, the purchasers of the motorcycles at issue, who (in the very words of this court) have valid contract and warranty claims that have not been

152

barred explicitly. The majority opinion should not determine the point of finality upon remand when Wis. Stat. § 808.08(3) explicitly provides a point of finality: This statute permits a party to move for further proceedings consistent with the appellate opinion within one year. The plaintiffs in the present case met this deadline.

¶ 129. Furthermore, despite this case's lengthy procedural history, the plaintiffs have not yet had their fabled "day in court." The plaintiffs have never had the opportunity to present the consumer complaints to a judge or a jury.

¶ 130. That the majority opinion denies the plaintiffs their day in court on the merits of their claims conflicts with basic concepts of justice and the clear policy of modern law favoring access to the courts and adjudication of cases on their merits.[22]

¶ 131. After examining *Tietsworth II,* the traditional rule about a circuit court's power after an appellate decision, Wis. Stat. § 808.08, and the public policy of finality, I conclude that the circuit court has the authority, pursuant to § 808.08(3) and paragraphs 36 and 37 of *Tietsworth II,* to reopen the plaintiffs' case to consider amending the pleadings.

IV

¶ 132. Under Wis. Stat. § 802.09(1), a party may seek leave of the circuit court at *any stage* of the proceedings, including after judgment, to amend the

_____

[22] *See, e.g., Gaddis v. La Crosse Products, Inc.,* 198 Wis. 2d 396, 407, 542 N.W.2d 454 (1996); *Schlumpf v. Yellick,* 94 Wis. 2d 504, 511, 288 N.W.2d 834 (1980).

pleadings "and leave shall be freely given *at any stage of the action* when justice so requires" (emphasis added).[23]

---

[23] Wisconsin Stat. § 802.09 provides in relevant part:

(1) Amendments. A party may amend the party's pleading once as a matter of course at any time within 6 months after the summons and complaint are filed or within the time set in a scheduling order under s. 802.10. Otherwise a party may amend the pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given at any stage of the action when justice so requires. A party shall plead in response to an amended pleading within 45 days after service of the amended pleading, or within 20 days after the service if the proceeding is to foreclose or otherwise enforce a lien or security interest, unless (a) the court otherwise orders or (b) no responsive pleading is required or permitted under s. 802.01(1).

(2) Amendments to conform to the evidence. If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

(3) Relation back of amendments. If the claim asserted in the amended pleading arose of the transaction, occurrence, or event set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the filing of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against such party, the party to be brought in by amendment has received such notice of the institution of the action that he or she will not be prejudiced in maintaining a defense on the merits, and knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against such party.

154

¶ 133. Because the majority opinion concludes that the circuit court did not have authority to reopen the case for purposes of amendment of the complaint, its discussion of Wis. Stat. § 802.09 is unnecessary and irrelevant.

¶ 134. Because I conclude that the circuit court has power under *Tietsworth II* and Wis. Stat. § 808.08(3) to reopen the case, I reach the question of the circuit court's power under Wis. Stat. § 802.09(1) to grant the plaintiffs leave to amend their complaint.

¶ 135. In *Mach v. Allison,* 2003 WI App 11, 259 Wis. 2d 686, 656 N.W.2d 766, the court of appeals concluded that the words "at any stage of the action" in the present statute mean exactly what they say, having retained the previous statute's application to amendments "before or after judgment." *Mach,* 259 Wis. 2d 686, ¶ 23. *Mach* held that "the statement . . . that a trial court may grant a motion to amend, either before or after judgment, is still a correct statement of the law. . . . [W]hether the amendment is before or after judgment does have a bearing on what justice requires." *Mach,* 259 Wis. 2d 686, ¶ 24. According to *Mach,* the timing of the motion and the reason for not bringing it sooner are relevant factors for a circuit court to consider in determining what justice requires.

¶ 136. Because the circuit court did not exercise its discretion under Wis. Stat. § 809.02 in the present case, I would remand the cause to the circuit court to exercise its discretion. I disagree with the court of appeals, which permitted the amendment of the pleading as a matter of law. The statute commits the decision whether to allow amendment to the circuit court's discretion.

¶ 137. I would remand the cause to the circuit court to apply *Mach* in exercising its discretion.

155

¶ 138. For the reasons set forth, I conclude that the circuit court and majority opinion have erred as a matter of law in declaring that the circuit court in the present case does not have power to reopen the case for amendment of the pleadings. I therefore dissent.

¶ 139. I am authorized to state that Justices ANN WALSH BRADLEY and N. PATRICK CROOKS join this opinion.